UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREATER ST. LOUIS CONSTRUCTION, ) <br> LABORERS WELFARE FUND, et al. ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> KIRKWOOD MASONRY, INC., ) <br> ) <br> Defendant. ) | Case No. 4:12 CV 694 CDP |

## **MEMORANDUM AND ORDER**

This closed matter is before the court on plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil, which they support with affidavits and documents. Plaintiffs obtained a default judgment against Kirkwood Masonry, Inc., and now seek a creditor's bill in equity against Luna Builds STL, LLC, which plaintiffs allege is the alter-ego entity of the named defendant. Luna Builds has been served with the motion, and the time for opposing the motion has passed without response. Because I find that Luna Builds operates as the alter ego of Kirkwood Masonry and its owner, Daniel Head, I will grant plaintiffs' motion.

1. **Background**

Plaintiffs are benefit plans, the trustees and fiduciaries of benefit plans, and one union. Defendant Kirkwood Masonry is a Missouri corporation that performed masonry and bricklaying services. Plaintiffs brought suit against

Kirkwood Masonry to recover delinquent contributions and liquidated damages owed to the plaintiff employee benefit funds under collective bargaining agreements between Kirkwood Masonry and Laborers Local Unions 42-53-110-660. On May 11, 2012, plaintiffs sought a default judgment against Kirkwood Masonry. Doc. 5. On May 29, 2012, this court entered judgment against Kirkwood Masonry in the amount of $34,457.47 for delinquent contributions, liquidated damages, interest, attorneys' fees, and costs owed to plaintiffs under collective bargaining agreements and the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(g)(2), and the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Doc. 9.

Daniel Head owns Kirkwood Masonry and served as its President until its dissolution on August 29, 2012.[1] Luna Builds filed its Articles of Organization with the Secretary of State of Missouri on May 15, 2012. Luna Builds is owned by David Fox, Mr. Head's brother-in-law. Doc. 78-12 at 16. Both companies perform stonemasonry and brickwork. Docs. 78-11 at 9, 33; 78-12 at 6–7. Mr. Head manages the day-to-day operations of Luna Builds, including hiring/firing employees, procuring jobs, and purchasing materials. Doc. 78-12 at 12, 15–17. Mr. Fox's only job duties are to sign checks; however, Mr. Head also signs checks.

---

[1] In his deposition, Mr. Head testified that his mother, Rachel Head, owns a minority stake in Kirkwood Masonry; however, his tax returns for 2008 and 2009 show that he maintained 100% ownership. Doc. 17-11 at 7; 78-22.

Doc. 78-12 at 17, 22. Mr. Head has used his own funds to purchase supplies for Luna Builds. Doc. 78-12 at 22.

Luna Builds purchased scaffolding, hand tools, a mortar mixer, and a trailer from Kirkwood Masonry for $3500. Mr. Fox did no research in determining the purchase price for that equipment, but instead relied upon the word of Mr. Head as to its worth. Doc. 78-12 at 23–25.

When advertising its services, Luna Builds listed Kirkwood Masonry's telephone number as its own contact number and used Kirkwood Masonry's symbol. Doc. 78-12 at 9–11. Both Kirkwood Masonry and Luna Builds employed Mr. Head's wife, Alisa Head, as well as Bryan Cady, Chris Kuseki, and Pedro Alvarez. Docs. 78-12 at 20–21; 78-11 at 33–35. Both Luna Builds and Kirkwood Masonry use common suppliers and the same insurance provider. Doc. 78-4. They have also both performed work for the same general contractors and worked at the same job sites. Docs. 78-4; 78-18; 78-19.

After entry of judgment, plaintiffs received $11,500 from a garnishment with BSI Contractors, Inc. However, that garnishment and all others have been released, and plaintiffs have been unable to otherwise collect on the judgment owed by Kirkwood Masonry. They now seek a creditor's bill in equity and to pierce the corporate veil of Luna Builds, in order to obtain $20,012.81, the balance

owed of the previous judgment. Luna Builds has been served with the instant motion, and the time for opposition has passed without response.

2. **Discussion**

The LMRA establishes liability of one business entity for the obligations of another under the "alter ego" theory "if the two are substantially identical in terms of ownership, management, supervision, business purpose, operations, customers, equipment, facilities and employees."[2] *Greater St. Louis Constr. Laborers Welfare Fund v. Mertens Plumbing and Mech., Inc.*, 552 F. Supp. 2d 952, 955 (E.D. Mo. 2007) (citing *Woodline Motor Freight, Inc. v. NLRB.*, 843 F.2d 285, 288–89 (8th Cir. 1988)). Each of the above factors need not be identical. *Id.* Under ERISA, one business entity is the alter ego of another if the two entities, "exist independently in form only, and those separate forms are used as a subterfuge to defraud, to justify a wrong or to mislead or discourage pursuit of legal action." *Id.* (citing *Kansas City Laborers*, 104 F.3d at 1055).

The creditor's bill in equity assists creditors who seek "to enforce the payment of debts out of assets that cannot be reached by traditional means of execution on a judgment established in a suit at law." *Shockley v. Harry Sander Realty Co., Inc.*, 771 S.W.2d 922, 924 (Mo. App. 1989) (citations omitted); *see*

---

[2] "The focus of the labor law alter ego doctrine is on the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a collective bargaining agreement." *Greater Kan. City Laborers Pension Fund v. Superior General Contractors, Inc.*, 104 F.3d 1050, 1055 (8th Cir. 1997) (internal quotations and citations omitted).

*also H.H. Robertson Co. v. V.S. DiCarlo General Contractors, Inc.*, 994 F.2d 476, 477 (8th Cir. 1993) (recognizing the availability of the action under Missouri law). A creditor's bill may be brought in a separate equitable action or in the underlying lawsuit where judgment was originally obtained. *Fleming Cos., Inc. v. Rich*, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997). To obtain a creditor's bill, a plaintiff must establish the existence of a judgment, the issuance of execution against that judgment, and a *nulla bona* return. *Shockley*, 771 S.W.2d at 924. However, where a judgment debtor is insolvent and issuance of execution would, therefore, be of no use, its issue is not required. *See Buckley v. Maupin*, 125 S.W.2d 820, 823 (Mo. 1939).

A creditor's bill "enables a judgment creditor to 'trace the value of the goods and services rendered to an empty-shell corporation to the parties behind such a corporation who have received and benefitted from the property or services.'" *H.H. Robertson*, 994 F.2d at 477 (quoting *Shockley*, 771 S.W.2d at 925). "The Missouri alter ego standard applies to such claims." *Mertens*, 552 F. Supp. 2d at 955 (citing *H.H. Robertson*, 994 F.2d at 477; *Mobius Mgmt. Sys., Inc. v. W. Physician Search, L.L.C.*, 175 S.W.3d 186, 189 (Mo. App. 2005)).

Missouri law presumes that corporations are separate entities, and courts do not lightly disregard the corporate form to hold one corporation liable for the behavior of another. *Mid-Mo. Tel. Co. v. Alma Tel. Co.*, 18 S.W.3d 578, 582 (Mo.

App. 2000). Missouri courts will pierce the corporate veil and hold a defendant liable for the torts of another corporation under the "alter ego" rule, if the plaintiff can establish:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and
>
> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or dishonest and unjust act in contravention of plaintiff's legal rights; and
>
> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Radaszewski v. Telecom Corp.*, 981 F.2d 305, 306 (8th Cir. 1992) (citation omitted); *see also Mobius Mgmt.*, 175 S.W.3d at 188–89. This standard is almost identical to the standard applied in ERISA cases. *See Mertens*, 552 F. Supp. 2d at 955 (citing *Kan. City Laborers*, 104 F.3d at 1055).

In determining whether one corporation exercised control over another to the extent necessary to pierce the corporate veil, the court looks to a number of factors, including: "the ownership and creation of both corporations, the management of the corporations, the physical location of corporate offices, and the transfer of assets, contracts, and employees between the corporations." *See Mertens*, 552 F. Supp. 2d at 955–56 (citations omitted).

In this case, plaintiffs have established the first element. Because the owners of both businesses are brothers-in-law, the businesses are deemed to have common ownership. *See id.* at 956 (spousal connection between owners establishes common ownership); *see also Walton Mirror Works, Inc. & Waldon Mirror & Blinds, Inc.*, 313 NLRB 1279, 1284 (1994) (finding common ownership where brother-in-law owned successor business). Both companies share the same supervision under Mr. Head, who manages the day-to-day operations of both companies and has the authority to use the funds for both companies. Kirkwood Masonry sold equipment, including scaffolding, a trailer, and a mortar mixer, to Luna Builds, who bought it without researching its market value. Both companies share employees, and both companies have worked on the same job sites for the same general contractors. Each factor supports a finding that Mr. Head exercised control over both companies' business practices and finances.

Plaintiffs have also shown that Mr. Head's control caused Kirkwood Masonry to breach its legal duty. Under its collective bargaining agreements with the union, Kirkwood Masonry had the legal duty to make contributions to benefit plans for each covered employee. However, its failure to make those contributions led this court to enter default judgment against Kirkwood Masonry in the amount of $34,457.47. Luna Builds filed its Articles of Organization four days after plaintiffs filed its motion for default judgment against Kirkwood Masonry. The

timing of its organization, viewed in light of the above facts, yields a strong inference that Luna Builds was organized in order to avoid payment of Kirkwood Masonry's debts.

Finally, plaintiffs have demonstrated the third element. Mr. Head's control of Kirkwood Masonry's operations and finances, and the breach of its legal duties, resulted in the plaintiffs' inability to collect the total judgment owed.

A judgment has been obtained, and the evidence before the court shows that Kirkwood Masonry is insolvent and that no further can be expected on plaintiffs' garnishments. I will issue a creditor's bill in equity in order that plaintiffs may satisfy the balance of the judgment against Kirkwood Masonry, totaling $20,012.81, from the assets of Luna Builds STL, LLC.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for a creditor's bill in equity and to pierce the corporate veil [# 77] is granted.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of March, 2014.